United States Court of Appeals,

Fifth Circuit.

No. 96-31056

Summary Calendar.

MITSUI & CO. (USA), INC., Plaintiff-Appellant,

v.

MIRA M/V, Defendant,

Euro-Baltic Lines, Inc., Defendant-Appellee.

April 28, 1997.

Appeal from the United States District Court for the Eastern
District of Louisiana.

Before SMITH, DUHÉ and BARKSDALE, Circuit Judges.

PER CURIAM:

Appellant, Mitsui & Company (USA), Inc. ("Mitsui"), appeals
dismissal of its cargo damage claim against Euro-Baltic Lines, Inc.
("Euro").   The district court correctly enforced the
forum-selection clause in the bill of lading covering the shipment.
We affirm.

FACTS:

Mitsui's cargo of steel was damaged in transit from Russia to
New Orleans aboard the M/V MIRA, chartered by Euro.  The cargo was
carried pursuant to a bill of lading which Mitsui received after
the cargo was loaded, not having negotiated the terms contained
therein.  The bill of lading contained both a forum-selection
clause, providing that all disputes be adjudicated in London,
England, and a choice-of-law provision, stating that if the bill of
lading covered the transportation of goods to or from the United

States, the Carriage of Goods by Sea Act ("COGSA") would control.

Mitsui sued Euro and the M/V MIRA for the damage to its cargo. Mitsui later amended its suit to name two additional defendants, Atlantic Arcturus, Inc., and Reederei Horst Zeppenfeld GmbH & Co., KH, the owners and managers of the MIRA.

Euro moved to dismiss on the basis of the forum-selection clause in the bill of lading. The district court granted the motion, dismissed Mitsui's lawsuit, and entered judgment in favor of Euro, determining that the forum-selection clause was enforceable pursuant to recent Supreme Court precedent. On Mitsui's motion, the district court subsequently vacated its judgment and once again dismissed Mitsui's claim against Euro. The court further provided Mitsui with one hundred and twenty days after final judgment within which to file suit in London, and certified the appeal under Rule 54(b).[1] Mitsui appealed.

### DISCUSSION:

We agree with those circuits that have addressed the issue that the enforceability of a forum-selection or arbitration clause is a question of law which is reviewed de novo. *See, e.g., Shell v. R.W. Sturge, Ltd.,* 55 F.3d 1227, 1229 (6th Cir.1995); *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 207 (7th Cir.1993); *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 956 (10th Cir.1992). The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid. *Vimar Seguros v.*

---

[1]The court then ordered that Mitsui's case against the remaining defendants be administratively closed pending the outcome of this appeal.

*Reaseguros, S.A. v. M/V SKY REEFER,* --- U.S. ----, ----, 115 S.Ct. 2322, 2329, 132 L.Ed.2d 462 (1995) (foreign arbitration clause); *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991); *M/S BREMEN v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972); *see also Kevlin Serv., Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir.1995). The Court in *BREMEN* articulated the policy underlying the presumptive validity of these clauses:

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

407 U.S. at 9, 92 S.Ct. at 1913. The Supreme Court has therefore instructed American courts to enforce such clauses in the interests of international comity and out of deference to the integrity and proficiency of foreign courts. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 629, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985).

The presumption of validity may be overcome, however, by a showing that the clause is "unreasonable under the circumstances." *BREMEN,* 407 U.S. at 10, 92 S.Ct. at 1913. The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court. *Id.* at 12-13, 15, 18, 92 S.Ct. at 1914-15, 1916, 1917-18.

3

Mitsui seeks to overcome the presumption of validity and to have the foreign forum-selection clause in the bill of lading invalidated by arguing that: (1) the clause contravenes § 3(8) of the COGSA; (2) the bill of lading is a contract of adhesion and the clause should not be enforced because it was not freely negotiated; and (3) the doctrine of *forum non conveniens* dictates the matter be tried in the forum where the cargo was discharged because to be forced to try the matter in England would effectively extinguish Mitsui's claim. These are essentially the same arguments raised by the appellant and ultimately rejected by the Supreme Court in *SKY REEFER. See* --- U.S. at ----, 115 S.Ct. at 2324.

Mitsui correctly points out that, before *SKY REEFER,* federal courts without exception invalidated foreign forum-selection clauses under § 3(8) of COGSA.[2] *See, e.g., Conklin & Garrett, Ltd. v. M/V FINNROSE,* 826 F.2d 1441 (5th Cir.1987). The leading case for invalidation was *Indussa Corp. v. S.S. RANBORG,* which held a foreign forum-selection clause invalid under COGSA because litigating in a foreign forum put a "high hurdle" in the way of enforcing liability against shipowners or carriers via increased inconvenience and cost and, therefore, effectively lessened liability within the meaning of § 3(8). 377 F.2d 200, 203 (2nd Cir.1967) (en banc). Mitsui relies heavily on *Indussa* and its

---

[2]That provision states that any contractual provision which seeks to limit a shipowner's or carrier's liability for damage or loss to goods caused by negligence or fault is void. 46 U.S.C. app. § 1303(8).

progeny.

Both *Indussa* 's rationale and holding were, however, rejected by the Supreme Court in *SKY REEFER,* which specifically held that foreign arbitration clauses are valid under § 3(8). --- U.S. at ----, 115 S.Ct. at 2326-27 ("[W]e cannot endorse the reasoning or the conclusion of the *Indussa* rule itself"). The Court agreed that § 3 of COGSA established clear duties which could not be abrogated by contract, i.e., liability which could not be lessened, but distinguished these from the mechanisms for enforcement of those duties. *Id.* at ----, 115 S.Ct. at 2327. It therefore concluded that, because the clause at issue concerned only the means of enforcing the carrier liability, the clause was enforceable. *Id.* A foreign arbitration clause involves not a question of liability but of where it will be enforced and, as such, is valid under COGSA. *Id.*

Mitsui seeks to escape the application of *SKY REEFER* by arguing that its holding should be restricted to foreign arbitration clauses only, not to foreign forum-selection clauses. However, "foreign arbitration clauses are but a subset of foreign forum selection clauses in general...." *SKY REEFER,* --- U.S. at ----, 115 S.Ct. at 2326; *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974). The *SKY REEFER* Court did not restrict its holding to arbitration clauses only, as the majority opinion makes clear: "nothing in [§ 3(8) ] suggests that the statute prevents the parties from agreeing to enforce [the obligations imposed by COGSA] in a particular forum." *SKY REEFER,*

5

--- U.S. at ----, 115 S.Ct. at 2327. (emphasis added).  Even Justice Stevens acknowledged in his dissent:

> Of course, the objectionable feature in the instant bill of lading is a foreign arbitration clause, not a foreign forum selection clause.  But this distinction is of little importance;  in relevant aspects, there is little difference between the two....  The majority's reasoning ... thus presumably covers forum selection clauses as well as arbitration.

*SKY REEFER,* --- U.S. at ---- n. 7, 115 S.Ct. at 2334 n. 7 (Stevens, J., dissenting).  Thus, Mitsui's attempt to distinguish *SKY REEFER* must fail.[3]

Mitsui next argues that the bill of lading is a contract of adhesion which it did not negotiate and which therefore should not bind it.  In response, Euro points out that the forum-selection provision is not uncommon in bills of lading, and thus should have been anticipated by Mitsui, a sophisticated international shipper/consignee well-versed in this type of transaction. Irrespective of this fact, the district court did not err in determining that, by filing a lawsuit for damages under the bill of lading, Mitsui has accepted the terms of the bill of lading, including the unnegotiated forum selection clause.  *All Pac. Trading, Inc. v. M/V HANJIN YOSU,* 7 F.3d 1427, 1432 (9th Cir.1993), *cert. denied,* 510 U.S. 1194, 114 S.Ct. 1301, 127 L.Ed.2d 653 (1994);  *Kanematsu Corp. v. M/V GRETCHEN W,* 897 F.Supp. 1314, 1317 (D.Or.1995).  Accordingly, Mitsui is bound by the bill of lading.

---

[3]Euro similarly points out that, because the *Indussa* rule which was disavowed by the *SKY REEFER* Court involved a foreign forum-selection clause rather than an arbitration clause, the Court's decision implicitly applies to forum-selection clauses as well.

Mitsui additionally contends that the forum-selection clause is inconsistent with the choice-of-law clause providing for the application of COGSA for goods traveling to U.S. ports. In essence, Mitsui argues it is illogical to require foreign courts to apply American law, so the clauses read together must actually mean disputes arising in American ports will be adjudicated in American courts applying COGSA, and foreign trade will be adjudicated in English courts under English law. *Id.*

There is no inconsistency in these provisions. As the district court concluded, the two clauses are not mutually exclusive: "if the bill of lading does require that COGSA be applied to this dispute, such an agreement is not inconsistent with the requirement that this dispute be determined by the High Court in London."[4] (internal quotations omitted).

At bottom, Mitsui's argument is based on the principle of *forum non conveniens.* It maintains that the relevant information and witnesses are located almost exclusively in the United States hence litigation in England will be so inconvenient and costly that Mitsui's claim would effectively be extinguished by enforcement of

---

[4]As an extension of this argument, Mitsui urges that the *SKY REEFER* Court held as it did only because it retained jurisdiction over review of the foreign arbitrator's decision. Mitsui misreads *SKY REEFER.* In that case, the petitioner sought invalidation of a forum arbitration clause partially because there was no guarantee that the Japanese arbitrator would apply COGSA. There was therefore the risk that the application of Japanese law would "lessen liability" in contravention of the dictates of COGSA § 3(8). --- U.S. at ---- - ---- 115 S.Ct. at 2329-30. In the instant case, there is no such risk since the parties have contractually agreed COGSA will apply to the merits of Mitsui's claim.

the clause and it should therefore be invalidated on public policy grounds.

As the district court noted, this case does not involve a local dispute between two American corporations. Rather, both parties are international corporations involved in the global transportation of goods. *Id.* The international character of the parties and the transaction prohibits American parochialism. *See BREMEN,* 407 U.S. at 9, 92 S.Ct. at 1912-13. Increased cost and inconvenience are insufficient reasons to invalidate foreign forum-selection or arbitration clauses. *See, e.g., SKY REEFER,* --- U.S. at ---- - ----, 115 S.Ct. at 2327-28; *Carnival Cruise Lines,* 499 U.S. at 603, 111 S.Ct. at 1532. Consequently, the district court did not err in enforcing the foreign forum-selection clause and dismissing Mitsui's claim against Euro.

AFFIRMED.